UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>William J. Knowles</u>

    v.                                          Civil No. 05-cv-363-PB

<u>William Wrenn, Commissioner,
New Hampshire Department of
Corrections, et al.</u>[1]

**REPORT AND RECOMMENDATION**

William Knowles has filed a complaint *pro se* pursuant to 42 U.S.C. § 1983 alleging that the defendants, employees of the New Hampshire Department of Corrections ("DOC"), have violated his Eighth Amendment right to adequate medical care during his incarceration. The matter is before me for preliminary review to determine, among other things, whether Knowles has stated any claim upon which relief might be granted. As discussed herein, I find that Knowles has stated a claim upon which relief might be granted against defendants Curry, Wrenn, and McLeod, and I

---

[1] The body of Knowles' complaint does not list any individual defendants, but refers to the New Hampshire State Prison ("NHSP") medical department and the New Hampshire Department of Corrections ("DOC") Commissioner or Agent Superior. Knowles has submitted summons forms for William Wrenn and Stephen Curry, the current and former DOC Commissioners, DOC Medical Director Robert McLeod, Nurse Practitioner Neculai, and Nurse Practitioner Judy Baker.

recommend the dismissal of any claim against defendants Neculai and Baker from this action.

## Standard of Review

Under this court's local rules, when an incarcerated plaintiff commences an action *pro se* and *in forma pauperis*, the magistrate judge is directed to conduct a preliminary review and to prepare a report and recommendation advising the district judge whether the action, or any portion thereof, should be dismissed because:

> (i) the allegation of poverty is untrue, the action is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief under 28 U.S.C. § 1915A(b); or
>
> (ii) it fails to establish subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).

United States District Court for the District of New Hampshire Local Rule 4.3(d)(2). In conducting the preliminary review, the Court construes *pro se* pleadings liberally. See Ayala Serrano v. Lebron Gonzales, 909 F.2d 8, 15 (1st Cir. 1990) (following Estelle v. Gamble, 429 U.S. 97, 106 (1976) to construe *pro se* pleadings liberally in favor of the *pro se* party). "The policy behind affording *pro se* plaintiffs liberal interpretation is that if they present sufficient facts, the court may intuit the

correct cause of action, even if it was imperfectly pled." <u>Ahmed v. Rosenblatt</u>, 118 F.3d 886, 890 (1st Cir. 1997), <u>cert. denied</u>, <u>Ahmed v. Greenwood</u>, 522 U.S. 1148 (1998).

At this preliminary stage of review, all factual assertions made by the petitioner and inferences reasonably drawn therefrom must be accepted as true. <u>See</u> <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996) (stating the "failure to state a claim" standard of review and explaining that all "well-pleaded factual averments," not bald assertions, must be accepted as true). This review ensures that *pro se* pleadings are given fair and meaningful consideration. <u>See</u> <u>Eveland v. Dir. of C.I.A.</u>, 843 F.2d 46, 49 (1st Cir. 1988).

## Background

William Knowles was incarcerated at the New Hampshire State Prison ("NHSP") from March of 1987 until October of 2003, when he was released on parole. During the 1990s, Knowles was diagnosed with glaucoma.[2] While he was incarcerated prior to being paroled, Knowles was regularly sent for tests and medical

---

[2] Glaucoma is "a group of eye diseases characterized by an increase in intraocular pressure which causes pathological changes in the optic disk and typical defects in the field of vision." <u>Dorland's Illustrated Medical Dictionary</u> (28th ed. 1994) at 697.

checkups for the condition.  Knowles asserts that he continued to get regular checkups for his glaucoma on his own once he was released on parole.

In March of 2004, Knowles was returned to the NHSP on a parole violation.  Between March of 2004 and August of 2005, Knowles was checked on a number of occasions by Optivan, an eye care service that contracted with the DOC to provide vision care to DOC inmates.  During these examinations, Knowles was given eye examinations and evaluated for glasses and for changes in his glaucoma or for other special vision needs.

On at least three occasions when Knowles was examined by Optivan personnel they sent instructions to the NHSP medical department that Knowles needed to be sent to an outside specialist for a "Field Test," which is a specialized test given regularly to glaucoma patients to determine the nature and extent of damage to a glaucoma patient's eyes.  The "Field Test" aids in detecting minute changes in the condition of the eyes so that corrective measures can be taken before the problems progress to severe eye damage.  Knowles was advised by two nurse practitioners[3] that he was on a list to be taken to see a

---

[3]Although not named in the body of the complaint, I presume that Knowles refers to Nurse Practitioners Neculai and Baker, for

specialist for a "Field Test," but he was never taken for the test.

On August 31, 2005, Knowles had a blood pressure test. He advised the nurse administering the test that he had had slight blurriness in his left eye for several days. The nurse advised Knowles to report to sick call if the problem persisted. On September 2, 2005, Knowles reported to sick call at 7:50 a.m. to report that the problem with his left eye was quickly worsening. Late that afternoon, Knowles was taken outside of the prison to see a specialist, Dr. Ford. Dr. Ford advised Knowles the damage to his left eye was permanent. Dr. Ford prescribed additional medication and other follow-up measures for Knowles, and directed that Knowles be seen again after two weeks. As of October 11, 2005, Knowles had not been returned to Dr. Ford's office for follow-up. In that time, Knowles reports the condition of his left eye worsened to the point where it is almost entirely non-functional and he must cover his left eye in order to see clearly with his right eye. Further, Knowles reports that he has still not received a "Field Test" on either eye.

---

whom he has submitted summons forms.

Knowles alleges that the lack of attention to his known and serious eye condition caused it to worsen to the point where his vision has been severely and permanently damaged.  Knowles claims that although he has received some medical care, the care he has received has been inadequate to meet his serious known medical needs as he was denied prompt access to an eye specialist and to a "Field Test" which was a necessary tool in properly diagnosing and treating Knowles' glaucoma.

## Discussion

I.  Medical Care Claim

The Eighth Amendment protects prison inmates from prison officials acting with deliberate indifference to their serious medical needs.  See Farmer v. Brennan, 511 U.S. 825, 831 (1994). To assert a viable cause of action for inadequate medical care, an inmate must first state facts sufficient to allege that the plaintiff has a serious medical need for which adequate care has not been provided.  Farmer, 511 U.S. at 831; Rhodes v. Chapman, 452 U.S. 337 (1981); Estelle, 429 U.S. at 106.  The inmate must then allege that a responsible prison official was aware of the need or of the facts from which the need could be inferred, and still failed to provide treatment.  Estelle, 429 U.S. at 106.  A

serious medical need is one that involves a substantial risk of serious harm if it is not adequately treated.  <u>Barrett v. Coplan</u>, 292 F. Supp. 2d 281, 285 (D.N.H. 2003); <u>Kosilek v. Maloney</u>, 221 F. Supp. 2d 156, 180 (D. Mass. 2002) (citing <u>Farmer</u>, 511 U.S. at 835-47); <u>see</u> <u>also</u> <u>Gaudreault v. Municipality of Salem, Mass.</u>, 923 F.2d 203, 208 (1st Cir. 1990), <u>cert. denied</u>, 500 U.S. 956 (1991) (defining a serious medical need as one "that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.").

Courts have recognized glaucoma as a serious medical condition, as it can result in the deterioration of vision or blindness.  <u>See, e.g.</u>, <u>Todaro v. Ward</u>, 565 F.2d 48 (2d Cir. 1977) (finding that medical conditions such as glaucoma and eye infections constitute serious ailments); <u>Cox v. District of Columbia</u>, 834 F. Supp. 439, 441 (D.D.C. 1992); <u>Flores v. N.Y. City Health & Hosps. Corp.</u>, 2003 WL 21709512, at *3 (S.D.N.Y. July 21, 2003) ("Courts consider evidence of a diagnosable eye condition to be significant in determining whether a plaintiff has alleged a serious medical condition.").  Accordingly, I find that Knowles has alleged that he has a serious medical condition.

"Adequate medical care" is treatment by qualified medical personnel who provide services that are of a quality acceptable when measured by prudent professional standards in the community, tailored to an inmate's particular medical needs, and that are based on medical considerations. United States v. DeCologero, 821 F.2d 39, 42-43 (1st Cir. 1987).  This does not mean that an inmate is entitled to the care of his or her choice, simply that the care must meet minimal standards of adequacy.  Deliberate indifference may be found where the medical care provided is "so clearly inadequate as to amount to a refusal to provide essential care." Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991). Constraints inherent in a prison setting may affect the choice of care provided, and may be relevant to whether or not prison officials provided inadequate care with a deliberately indifferent mental state. Wilson v. Seiter, 501 U.S. 294, 302 (1991).  Delay in the provision of medical care may evidence deliberate indifference. Estelle, 429 U.S. at 104-05.

Knowles has alleged that he has a serious medical condition, glaucoma, and that the DOC officials were aware of his condition and his need for treatment.  He has alleged that, in fact, he received some treatment, but that his medical care was in many

ways inadequate to meet his needs.  Knowles specifically alleges that he was denied timely access to a specialist and a "Field Test" and thus did not receive adequate treatment and assessment for his glaucoma, and that as a result, his vision was severely impaired.  Knowles further alleges that this type of specialized test is part of a regularly administered medical care plan for glaucoma patients.

Finally, Knowles alleges that DOC officials were notified of his medical condition and needs not only by Optivan professionals who conducted eye exams on Knowles, but by Knowles himself, who states that he attempted to obtain the help he needed through the administrative grievance procedure in place at the prison.  Accordingly, Knowles alleges that the indifference to his medical condition and treatment needs therefore was knowing and deliberate.

Because Knowles has alleged a serious condition, a known need for treatment, treatment that was inadequate to meet those needs, and deliberate indifference to his medical condition and needs on the part of the defendants, he has sufficiently alleged that he was denied medical care to which he is constitutionally entitled.  Accordingly, I will direct service of Knowles' Eighth

Amendment claim against the appropriate defendants in an Order issued simultaneously with this Report and Recommendation.

II. Choice of Defendant

   A.   The Nurse Practitioners

Knowles has named DOC Nurse Practitioners Neculai and Baker as defendants to this action. Knowles has only alleged, however, that the nurse practitioners advised Knowles that he was on a list to go for a Field Test. Knowles has not alleged that the nurse practitioners were in any way responsible for assuring that he receive such a test.[4] Accordingly, I recommend that the nurse practitioners be dismissed from this action.

   B.   The Supervisory Defendants

"Supervisory liability under § 1983 cannot be predicated on a respondeat theory, but only on the basis of the supervisor's own acts or omissions." Aponte Matos v. Toledo Davila, 135 F.3d 182, 192 (1st Cir. 1998) (internal citations omitted). A supervisor must be either "a primary actor involved in, or a prime mover behind, the underlying violation." Camilo-Robles v. Zapata, 175 F.3d 41, 43-44 (1st Cir. 1999). There must be "an

---

[4]In a letter submitted to the Court with his summons forms, Knowles states that he included the nurse practitioners as defendants because he believes they will be of help in determining who is responsible for his injuries.

affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization." Id. at 44.

### 1. The DOC Medical Director

Knowles names Robert McLeod, the DOC Medical Director to this action as the individual responsible for his medical care. Although Knowles has not at this time listed specific acts or omissions taken by McLeod regarding Knowles' care, I find that Knowles has sufficiently alleged that McLeod, in his position as Medical Director at the DOC, would have been aware of Knowles' medical condition and the lack of care he was receiving, if not as a result of his personal involvement in Knowles' case, than as a result of Knowles' request slips and administrative grievances filed regarding his medical care. Accordingly, I find that Knowles has adequately stated a claim against McLeod to allow this matter to proceed against him at this time. I will direct this action to be served on McLeod in the Order issued simultaneously with this Report and Recommendation.

### 2. The Commissioner of Corrections

Knowles has named both former DOC Commissioner Stephen Curry and present DOC Commissioner William Wrenn as defendants to this

action. Knowles claims that these officials were aware of his condition and the lack of medical care he received because he grieved these issues through the administrative grievance process. These officials, despite holding the ultimate responsibility for his care while in the custody of the DOC, did nothing to correct the problem or see to his medical care. Because he has adequately alleged his Eighth Amendment claim against Curry and Wrenn, I will direct that this action proceed against them in an Order issued simultaneously with this Report and Recommendation.[5]

---

[5] If there are other defendants to be named to this action, Knowles must obtain the names of the other defendants in discovery in order to pursue his claims against them. After obtaining the names, Knowles will have to properly move to amend his complaint. To this end, upon service of this claim on the defendants listed, Knowles can serve those defendants with interrogatories to obtain the full names of any appropriate defendants that are not presently named in the complaint, pursuant to Fed. R. Civ. P. 33(a) which states in pertinent part:

> Without leave of court or written stipulation, any party may serve upon any other party written interrogatories, not exceeding 25 in number including all discrete subparts, to be answered by the party served or, if the party served is a public or private corporation or a partnership or association or governmental agency, by an officer or agent, who shall furnish such information as is available to the party.

Further, if Knowles is not in possession of the names of

                                Conclusion

   For the reasons discussed herein, I recommend that the claims against defendants Neculai and Baker be dismissed.  In an Order issued simultaneously with this Report and Recommendation, I will direct that Knowles' Eighth Amendment medical care claim be served on defendants Curry, Wrenn and McLeod.  Any objections to this Report and Recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See Unauthorized Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

                                              _James R. Muirhead_____
                                              James R. Muirhead
                                              United States Magistrate Judge

Date:    April 12, 2006

cc:      William J. Knowles, *pro se*

---

particular medical care providers within the DOC, he is entitled to receive a copy of his medical records, which should contain the names of the DOC medical personnel responsible for his care and treatment.